IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA KATZ | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 09-645 |
| | : | |
| GENUARDI'S FAMILY MARKETS, | : | |
| INC., et al. | : | |
|     Defendants | : | |

# MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                                          July 8, 2010
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

Donna Katz ("Plaintiff") brought this action against Genuardi's Family Markets, Inc., Genuardi's Family Markets, LP, GFM Acquisition, LP, and GFM Holdings, LLC ("Defendants") seeking damages relating to injuries she allegedly sustained as a result of a fall on the premises of a supermarket operated by Defendants. The parties consented to magistrate judge jurisdiction. Defendants have moved for summary judgment.[1] The court heard oral argument on June 18, 2010. For the reasons set forth below, we will **GRANT** Defendants' motion.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (Dec. 1, 2009).

---

[1] The moving parties identify themselves as "Safeway, Inc., and Genuardi's Family Markets, L.P." and indicate that they were incorrectly named in the suit as "Genuardi's Family Markets, Inc., Genuardi's Family Markets, LP, GFM Acquisition, LP and GFM Holdings, LLC." (Defs. Mot. Summ. Jmt. at 1.) Plaintiff has not objected to this characterization of the proper defendants.

1

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it could be said to affect the outcome of the case under governing law. *Id.* The moving party bears the initial burden of "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to successfully oppose a properly supported motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In reviewing the summary judgment record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994). The court may not make credibility determinations or weigh the evidence in making its determination. *See Anderson*, 477 U.S. at 255 (observing that these are jury functions).

### III.   FACTUAL BACKGROUND

The papers before us show that Plaintiff entered one of Defendants' Montgomery County stores between 1:15 and 1:30 p.m. on February 23, 2007 when she sought to purchase her lunch. Shortly after entering the store, she fell forward, landing on her knees while bracing her fall with her right hand. (Katz Dep. [Pl. Opp. Mot. Summ. Jmt. Ex. A] at 45-49.) Michael Landolfi, a Frito-Lay salesman, who had been attending to his display, came to Plaintiff's aid and directed her to the store manager's office. The store manager, Donna Mundy, responded to Plaintiff and asked her about the extent of her injuries. Plaintiff reported that she did not require an ambulance or any other immediate medical attention. Mundy then walked with Plaintiff back to the area where she fell and

2

inspected the floor, with particular attention to the space in front of a nearby beverage cooler. Mundy reported that she found nothing out of order. Store surveillance video footage[2] shows, however, that about one minute after Plaintiff's fall, and prior to Mundy's inspection, Landolfi had moved a nearby rug over the area of the fall.

Landolfi testified that he had been in that area of the store for approximately five minutes before Plaintiff fell. (Landolfi Dep. [Defs. Reply Ex. A] at 26.) He stated that he was not aware of anyone having dropped a bottle or spilled any liquid in the area where Plaintiff fell before she fell, nor did he see any liquid, glass, or anything else on the floor which could have caused the fall. (Landolfi Dep. [Defs. Reply Ex. A] at 26, 29; Landolfi Dep. [Pl. Opp. to Defs. Mot. Summ. Jmt. Ex. D] at 47.) When confronted with the surveillance tape showing that he moved the rug shortly after the fall, he could offer no explanation about why he did so, although he answered in the negative when asked if it "ha[d] anything to do with wetness or glass on the floor[.]" (Landolfi Dep. [Pl. Opp. to Defs. Mot. Summ. Jmt. Ex. D] at 47.)

Plaintiff, on her part, testified at her deposition that she fell because "there was liquid. There was liquid." (Katz Dep. [Pl. Opp. Mot. Summ. Jmt. Ex. A] at 50.) She also stated, however, that she did not see any liquid in the area where she fell either before or after her fall and that there was no dampness on her clothing. Similarly, she did not see any indication of broken glass in the area. (*Id.* at 48, 50-51, 53, 55-56.) Plaintiff also testified that she overheard Landolfi tell Mundy when Mundy accompanied her to the site of the fall: "There was a liquid and glass spilled. It wasn't

---

[2] Although not a component of Defendants' motion, the surveillance footage was referred to in the papers. Several still photos from the video were included in an exhibit to Plaintiff's opposition brief. At oral argument, the parties agreed that the video could be considered by the court as part of the summary judgment record. A copy of the footage was provided by the parties to the Court.

3

cleaned up properly." (Katz Dep. [Pl. Opp. Mot. Summ. Jmt. Ex. A] at 52.)

## IV. DISCUSSION

Defendants have moved for summary judgment on the grounds that Plaintiff has failed to come forward with sufficient evidence to show that there is a genuine issue as to whether Defendants caused any hazardous condition to be on the floor or that they were aware of the existence of any hazardous condition prior to the fall. (Def. Mot. Summ. Jmt. ¶¶ 13-14, 18.) We agree that this deficiency requires judgment to be entered in favor of Defendants.[3]

The parties do not dispute that Plaintiff was an invitee in Defendants' store and that Defendants would therefore be subject to liability for physical harm caused to Plaintiff by a condition on the land (or in the store) if the Defendants: (a) know of the condition, or by the existence of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees; (b) should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect them against the danger. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citing Restatement (Second) of Torts § 343 (1965)). A possessor of land, however, is not an insurer of the visitor's safety. *See, e.g., Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 939 (Pa. Super. Ct. 2002); *Moultrey v. Great Am. & Pac. Tea Co.*, 422 A.2d 593, 595 (Pa. Super. Ct. 1980). Moreover, "the mere happening of an accident or an injury does not establish negligence nor raise an inference or presumption of negligence nor make out a prima facie case of negligence." *Amon v. Shemaka*, 214 A.2d 238, 239 (Pa. 1965).

---

[3] Defendants also "contend that there was no hazardous substance on the floor which caused plaintiff to fall." (Def. Mot. Summ. Jmt. ¶ 5.) We need not address this contention in light of our resolution of Defendants' argument concerning the notice requirement.

Pennsylvania courts recognize that if the harmful condition is traceable to the acts of the possessor or its agents, the plaintiff need not prove any notice in order for the possessor to be liable. *Moultrey*, 422 A.2d at 596. A jury may also infer actual notice if there is evidence that the condition is one that the owner knows has frequently recurred. *Id.* If the condition is due to the actions of others for whom the possessor is not accountable, however, the possessor cannot be liable without "other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Id.*

Courts applying these principles have found that possessors were entitled to summary judgment in a number of cases in which there was no evidence to show how the hazardous condition came to be on the floor or how long it had been there prior to the fall. *See, e.g., Moultrey*, 422 A.2d at 595, 597 n.6 (no evidence as to how long cherry on floor of supermarket); *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965) (no evidence of how grape came to be on floor of supermarket nor how long there prior to fall); *Hower v. Wal-Mart Stores, Inc.*, Civ. A. No. 08-1736, 2009 WL 1688474, *4 (E.D. Pa. June 16, 2009) (finding that constructive notice of the spill in that case "cannot be inferred")). These courts have also noted that, where the evidence "indicates that the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Moultrey*, 422 A.2d at 596. In these circumstances, "[o]ne of the most important factors to be taken into consideration is the time elapsing between the origin of the defect

or hazardous condition and the accident." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001). Courts have routinely granted summary judgment where the plaintiff lacked evidence of the duration of time a spill remained on the floor prior to an accident. *See, e.g., Hower*, 2009 WL 1688474 at *4 (E.D. Pa. June 16, 2009) (cataloguing cases). The evidence of tracking in the spilled substance, for instance, is evidence of temporal duration and can support a finding of constructive notice, while the absence of tracking from the area of a spill is evidence that the spill is one of recent origin. *Id.*

We find that Plaintiff has not met her burden under Rule 56, in response to a properly-supported motion for summary judgment, to come forward with affidavits, depositions, answers to interrogatories, or any other admissible evidence that "show[] a genuine issue for trial" with respect to causation or notice. *See* Fed. R. Civ. P. 56(e)(2) (Dec. 1, 2009). First, Plaintiff has not pointed to any evidence from which a jury could reasonably conclude that Defendants or their employees or agents *created* a spill or other hazardous condition. Plaintiff seeks generally to rely upon her testimony that she overheard Landolfi tell Mundy after the fall that "there was a liquid and glass spilled. It wasn't cleaned up properly." One problem with this evidence is that it is contradicted by the deposition testimony of Landolfi and Mundy and is not corroborated by Plaintiff's own deposition testimony that she did not see liquid or glass in the area of her fall.[4] *See* Landolfi Dep. [Defs. Reply Ex. A] at 26, 29, *and* Landolfi Dep. [Pl. Opp. Mot. Summ. Jmt. Ex. D] at 47 (stating that he was not aware of anyone having dropped a bottle or spilled any liquid in the area where Plaintiff fell before she fell and that he did not see any liquid, glass, or anything else on the floor

---

[4] We also have serious reservations about the admissibility of this out-of-court statement made by a non-party, for the reasons discussed at oral argument.

6

which could have caused the fall); Katz Dep. [Pl. Opp. Mot. Summ. Jmt. Ex. A] at 48, 50-51, 53, 55-56 (stating that she did not see any liquid in the area where she fell either before or after her fall, that there was no dampness on her clothing, and that she did not see any indication of broken glass in the area). A further difficulty for Plaintiff as to this "evidence" is that the statement of Landolfi as Plaintiff herself related it does not attribute the "spill" of liquid and glass to any conduct of Defendants or its agents. Accordingly, Plaintiff has failed to meet her Rule 56 burden as to a premises liability theory based upon the defendant having *caused* the hazardous condition.

Plaintiff also has failed to meet her Rule 56 burden as to an *actual notice* theory. Again, she would seem to rely upon the Landolfi statement to suggest that there was a response to a spill that would demonstrate knowledge of the existence of a hazardous condition. The Landolfi statement, however, fails to link any of *Defendants'* agents to the spill response or any allegedly deficient clean-up. As she has pointed to no other evidence pertinent to this issue, Plaintiff has insufficient evidence to avoid summary judgment on the grounds that Defendants had *actual notice* of a hazardous condition that caused her to fall.

This leaves the issue of whether Plaintiff has presented sufficient evidence from which a reasonable jury could conclude that Defendants had *constructive notice* of a dangerous condition in the area in which Plaintiff fell. To meet this burden, Plaintiff must demonstrate that the dangerous condition had existed for such a length of time that Defendants, in the exercise of ordinary care, should have been aware of it. Even assuming that a jury would find that there was some sort of liquid on the floor that caused Plaintiff to fall as she did,[5] there is no evidence to support any

---

[5] We note that the surveillance footage does not support the proposition that there was a hazardous condition on the floor in this area, as several other customers successfully navigated the entrance during the minutes preceding and in the minute immediately after Plaintiff's fall.

reasonable inference as to how long the liquid had been present and whether it was there for such a period of time as to trigger Defendants' duty to be aware of it.

Plaintiff argues, based upon the most favorable interpretation she can glean from the testimony of Defendants' employees concerning the store inspection system, that the store employee who is believed to have performed an inspection of the store between 12:50 and 12:59 p.m. would not have actually inspected and perceived the particular area of the store in which Plaintiff fell. Plaintiff's argument appears to be that Defendants would have (and should have) known about the spill if it had conducted an adequate inspection. Plaintiff has presented no evidence, however, that the liquid was present and could have been detected during that walk-through inspection during that time frame. Defendants' allegedly deficient safety inspection system says nothing about how long the spill was present. *See, e.g., Hower v. Wal-Mart Stores, Inc.*, Civ. A. No. 08-1736, 2009 WL 1688474, *6 (E.D. Pa. June 16, 2009) (noting same in case where summary judgment granted; distinguishing from cases where evidence of footprints or shopping cart tracks in spill suggested spill was not fresh). *See also Kujawski v. Wal-Mart Stores, Inc.*, No. 06-4120, 2007 WL 2791838, *3 (E.D. Pa. Sept. 25, 2007) (granting summary judgment where no evidence in the record as to how spill occurred, and notwithstanding lack of evidence of when store last inspected aisle). Therefore, we do not find any evidence concerning Defendants' inspection system to support Plaintiff's position.

Plaintiff also makes much of the fact that she fell in an area next to a "grab and go" cooler containing bottled beverages and near a self-serve floral area where shoppers lift bouquets out of buckets of water. Here, however, Plaintiff is not suggesting reasonable inferences but rather is doing nothing more than inviting speculation that these products caused liquid to be on the floor where she

8

fell. While Landolfi testified that he had seen vendors drop bottles while re-stocking the cooler, he did not see vendors filling that cooler that day, nor did he ever see anyone drop any bottles in the floral area of that store. (Landolfi Dep. [Pl. Opp. to Defs. Mot. Summ. Jmt. Ex. D] at 38, 39.) His testimony simply does not amount to sufficient evidence whereby a jury could reasonably find that there was some sort of inherent or persistent problem with liquid on the floor in this part of the store such that Defendants should be held to have constructive notice that a dangerous condition existed on this floor at the time of Plaintiff's fall. *See also Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965) (rejecting plaintiffs' argument that display of loose grapes on counter seven feet from bags and across aisle from scale constituted negligence in and of itself, where evidence showed store made every effort to keep aisle clean); *Moultrey v. Great Am. & Pac. Tea Co.*, 422 A.2d 593, 597 n.6 (Pa. Super. Ct. 1980) (observing that Plaintiff had offered no evidence as to whether manner in which cherries had been packaged and displayed had led to fruit falling to floor in the past). Plaintiff cannot avoid summary judgment simply by reference to the fact that various containers of liquid are located near the situs of her fall.

Before closing, we acknowledge that Plaintiff has placed substantial reliance upon the uncontested fact pertaining to Landolfi's movement of the rug within a minute after Plaintiff's fall. Plaintiff understandably argues that this creates a reasonable inference from which a fact-finder could conclude that there had been some sort of hazardous substance on the floor causing Landolfi to take this action. Plaintiff seeks to bolster this inference with her testimony of the Landolfi statement that was reportedly made after the fact suggesting that there was liquid spilled somewhere. Ultimately, however, this evidence is of little relevance to the element of causation or notice, which is an essential element of the premises liability claim upon which Plaintiff seeks relief. Therefore,

regardless of the strength or weakness of Plaintiff's evidence as to the *existence* of a hazardous substance on the floor which caused her to fall, her claim cannot proceed because she lacks sufficient evidence that Defendants were under a duty to have protected her from this condition in these circumstances in light of their lack of *notice*.

## V. CONCLUSION

Plaintiff has failed to come forward with sufficient direct or circumstantial evidence from which a jury could reasonably conclude that Defendants either created a dangerous condition on the floor that caused her to fall or that they had actual or constructive notice that someone else had created such a condition. This is fatal to her premises liability claim. Accordingly, we will enter an order granting Defendants' motion.

An appropriate order follows.